UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| KEVIN HAYES,<br><br>              Plaintiff,<br><br>   vs.<br><br>ACUITY, a Mutual Insurance Company,<br><br>              Defendant. | CIV. 17-5015-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Kevin Hayes filed a multi-count complaint against the defendant Acuity. (Docket 1). The causes of action alleged in plaintiff's complaint are count I, bad faith; count II, barratry; count III, abuse of process; and count IV, conversion. Id. The complaint seeks compensatory damages, punitive damages and attorney's fees. Id. at pp. 12-13. Acuity filed an answer denying the allegations in plaintiff's complaint. (Docket 9).

Acuity filed a motion for summary judgment together with a legal memorandum, a statement of undisputed material facts and an affidavit with three exhibits. (Dockets 25-28 & 28-1 through 28-3). Plaintiff filed a response to defendant's motion for summary judgment together with a statement in response to defendant's statement of facts, an affidavit and 12 exhibits. (Dockets 32-33, 33-1 through 33-12 & 37). Acuity filed a reply brief

together with an affidavit and 11 exhibits. (Dockets 38, 39 & 39-1 through 39-11).

Plaintiff filed a motion for partial summary judgment together with a legal memorandum and a statement of undisputed material facts. (Dockets 34-36). Defendant filed a response to plaintiff's motion for summary judgment. (Docket 41). Plaintiff filed a reply brief in support of his motion. (Docket 43).

One day later, Acuity filed a motion for leave to file a response to plaintiff's statement of uncontested facts together with defendant's proposed response and a legal memorandum. (Dockets 44, 44-1 & 45). Plaintiff filed a response to defendant's motion for leave to file a response.[1] (Docket 46). Defendant filed a reply brief in support of its motion. (Docket 47).

For the reasons stated in this order, defendant's motion for summary judgment is denied; plaintiff's motion for partial summary judgment is granted; defendant's motion for leave to file a response to plaintiff's statement of uncontested facts is granted; and plaintiff's motion to file a sur-reply brief is denied as moot.

---

[1]Plaintiff requests that if the court grants defendant's motion to file a response to plaintiff's statement of undisputed facts, he should be permitted to file a sur-reply brief to "address new issues raised after the filing of his Reply Brief[.]" (Docket 46 at p. 2).

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at p. 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Id. at
p. 323.

In determining whether summary judgment should issue, the facts and
inferences from those facts must be viewed in the light most favorable to the
nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 587-88 (1986). The key inquiry is "whether the evidence presents a
sufficient disagreement to require submission to a jury or whether it is so one-
sided that one party must prevail as a matter of law." Anderson, 477 U.S. at
pp. 251-52.

**UNDISPUTED MATERIAL FACTS**

The following recitation consists of the material facts developed from the
complaint (Docket 1), defendant's answer (Docket 9), the parties' statements of
undisputed material facts (Dockets 27 & 37) and other evidence where
indicated. Where a statement of fact is admitted by the opposing party, the
court will only reference the initiating document. These facts are "viewed in
the light most favorable to the [party] opposing the motion." Matsushita Elec.
Indus. Co., 475 U.S. at 587.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The facts material to defendant's motion for summary judgment are as
follows. At all times material to this proceeding, Kevin Hayes was employed by
Rosenbaum Signs & Outdoor Advertising, Inc. ("Rosenbaum"). (Docket

1 ¶ 5).   Acuity was the workers' compensation insurance carrier for Rosenbaum.   <u>Id.</u> ¶ 6.

Mr. Hayes had a history of low back problems.   (Docket 27 ¶ 1).   His medical history includes degenerative disk disease.   (Docket 37 ¶ 2).   In 1989, Mr. Hayes sustained a work-related injury while working for the postal service.  (Docket 27 ¶ 3).   This injury resulted in a multilevel fusion surgery in 1991.  <u>Id.</u>   This injury was covered by a federal workers' compensation claim and Mr. Hayes continues to receive a federal disability annuity payment because of his inability to return to work with the postal service.   <u>Id.</u>   He continued to have pain from the 1989 injury and took medication but was eventually able to return to the work force.   <u>Id.</u> ¶ 4.

In May 2005, Mr. Hayes began working as a sign installer for Rosenbaum.   <u>Id.</u> ¶ 5.   In March 2007, Mr. Hayes suffered a work injury to his lower back.   (Docket 1 ¶ 8).   He sought treatment with Dr. Christopher Dietrich at The Rehab Doctors.   (Docket 27 ¶ 7).   His initial complaints were pain in his upper back and shoulder blades and he was diagnosed with a thoracic strain.   <u>Id.</u>   Later in his treatment with Dr. Dietrich, Mr. Hayes complained of low back pain.   <u>Id.</u>   Dr. Dietrich treated plaintiff and prescribed physical therapy, multiple injections and pain medication to address his complaints of back and leg pain.   <u>Id.</u> ¶ 8.   Mr. Hayes ended his employment with Rosenbaum despite being able to perform his job duties without accommodation.   <u>Id.</u> ¶ 9.   After leaving Rosenbaum, Mr. Hayes

started work at the Rapid City landfill as an operator running bailers, loaders and other equipment.   Id. ¶ 10.

On October 4, 2007, Mr. Hayes was seen for an independent medical examination ("IME") with Dr. Dale Anderson.[2]   Id. ¶ 11; see also Docket 37 ¶ 11.   Dr. Anderson's IME report concluded the 2007 work injury was the major contributing fact to Mr. Hayes' condition.   (Docker 37 ¶ 12).   Acuity posed questions to Dr. Anderson.   To the question "is the accident of March 27, 2007, the major contributing factor to Mr. Hayes' present medical condition and need for treatment?"   Dr. Anderson responded "yes."   Id. (internal reference omitted).

Based on Dr. Anderson's report, Acuity denied medical treatment benefits to Mr. Hayes.   (Docket 27 ¶ 13).   Mr. Hayes filed a petition for hearing with South Dakota Department of Labor, Division of Labor and Management ("DOL") on May 13, 2009, to challenge the denial of additional medical benefits. Id. ¶ 14.

Dr. Anderson was deposed on March 30, 2010.   (Docket 1 ¶ 16). Dr. Anderson testified Mr. Hayes' low back condition was 50 percent caused by his pre-existing low back fusion in 1991 and 50 percent caused by the 2007

---

[2]Under SDCL § 62-7-1, the examination is classified as a "compulsory medical examination" and paid by the employer "for the purpose of determining the nature, extent, and probable duration of the injury received . . . and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this title."   Id.; see also Docket 37 ¶ 11.

injury.  Id. ¶ 17.  After Dr. Anderson's deposition, on July 30, 2010, Acuity

filed an amended answer with the DOL admitting that Mr. Hayes' "work

activities are currently a major contributing cause to his current need for

medical treatment or low back pain."  Id. ¶ 20.  On August 3, 2010, the DOL

dismissed Mr. Hayes' case stating among other things:

> The Employer and Insurer, having filed an Amended Answer, and
> having admitted items in controversy as set out in the Petition, and
> the parties having agreed that controversy or dispute no longer
> exists in this matter, at this time, IT IS HEREBY: ORDERED that
> the above-captioned matter be dismissed without prejudice.

Id. ¶ 22.

On May 2, 2011, Acuity required Mr. Hayes to see Dr. Nolan Segal for a

second IME.[3]  (Docket 1 ¶ 33).  On August 5, 2011, based upon Dr. Segal's

IME, Acuity denied further medical benefits to Mr. Hayes.  Id. ¶ 40.

Mr. Hayes filed a second petition for a hearing with the DOL.  (Docket 27

¶ 22).  At the DOL hearing, Mr. Hayes offered by affidavit the medical opinions

of Dr. Christopher Dietrich together with his treatment records.  Id. ¶ 23.

Acuity presented Dr. Segal's deposition at the hearing.  Id. ¶ 24.  The DOL

concluded Dr. Segal's opinions should be given greater weight than the

opinions of Dr. Dietrich because Dr. Segal had access to the entire medical

record.  Id. ¶ 25.  The DOL determined Mr. Hayes was inconsistent in

reporting his medical history to his treating physicians and the opinion of Dr.

---

[3]SDCL § 62-7-1 permits multiple IMEs "at intervals not oftener than once
every four weeks."

Segal was based on a more solid foundation than the opinion of Dr. Dietrich. Id. ¶ 27.   The DOL found Mr. Hayes' medical records documented consistent complaints of pain which predated the 2007 work injury.   Id. ¶ 28.   The DOL concluded Dr. Dietrich was not aware of the medical records documenting complaints of low back pain and lower extremity pain predating the 2007 injury.   Id. ¶ 29.   The DOL found Mr. Hayes' medical records identified factors impacting his reported participation in recreational activities which had not been considered by Dr. Dietrich.   Id. ¶ 30.   The DOL accepted the opinions of Dr. Segal over the opinions of Dr. Dietrich.   Id. ¶ 31.   On April 17, 2013, the DOL issued findings of fact, conclusions of law and a decision favorable to Acuity.   Id. ¶¶ 32-33.

Mr. Hayes appealed the DOL decision to the Seventh Circuit Court in Rapid City, South Dakota.   Id. ¶ 34.   A state circuit court judge affirmed the DOL decision.   Id. ¶¶ 35-36.

Mr. Hayes appealed to the South Dakota Supreme Court.   On August 27, 2014, the South Dakota Supreme Court issued its decision, Hayes v. Rosenbaum Signs & Outdoor Advertising, Inc., and Acuity, 853 N.W.2d 878 (S.D. 2014).   The court found that "as of July 30, 2010, Employer's position, which was judicially accepted on August 3, 2010, was that Hayes' work activities were at that time a major contributing cause to his current need for medical treatment."   Id. at 883.   Addressing the differing opinions of Acuity's physicians, the court found:

Dr. Anderson's opinion and Dr. Segal's opinion differ at one significant point in time—August 3, 2010—the date Employer's admission in its amended answer was judicially accepted by the Department. Employer's positions were inconsistent because Dr. Segal's position that 100 percent of Hayes' back problems were attributable to his pre-existing conditions directly contradicted Dr. Anderson's position that fifty percent of Hayes' back problems were attributable to his pre-existing conditions and fifty percent attributable to his work injury.

Id.  The court observed:

[W]e do not feel that it is the intent of workers' compensation statutes to allow employers to retain new experts to derive new positions based on the same facts contrary to what was previously admitted and judicially accepted, and have the employee again, and continually, bear the burden of proving what was previously settled by agreement or action under SDCL 62-7-12.  Yet, that is what Employer seeks here.

Id. at 883-84.  The court ruled "[j]udicial estoppel . . . prevents Employer from intentionally asserting an inconsistent position that would pervert the judicial machinery. . . . As a result, Employer is estopped from taking a contrary position from what was admitted, pleaded, and judicially accepted as of August 3, 2010."  Id. at 884.

The South Dakota Supreme Court addressed the issue of whether Mr. Hayes proved his 2007 injury was and remains a major contributing cause of his current condition.  Based on the "[e]mployer's amended answer admitting causation, and the Department's acceptance of [e]mployer's position on August 3, 2010," the court held "that Hayes met his burden of proving by a preponderance of the evidence that his work-related activities as of August 3, 2010, were a major contributing cause of his disability."  Id. at 885.  The

court rejected Acuity's argument that under SDCL § 62-1-1(7) the burden

"remains" with Mr. Hayes to prove his work related injuries continued to be a

major contributing cause of his present condition.   Id. at 887.

> When SDCL 62-1-1(7) is read not in isolation but as a whole in light
> of other enactments, specifically SDCL 62-7-33, the statute's intent
> is not to place a continuous burden on a claimant once he . . . proves
> a compensable injury.     Instead, once claimant proves a
> compensable injury, SDCL 62-7-33 provides the method for a party
> to assert a change in condition. . . . if a claimant proves a
> compensable condition under SDCL 62-1-1(7) and the employer
> subsequently feels claimant's condition no longer "remains a major
> contributing cause of the disability, impairment, or need for
> treatment,"   SDCL 62-1-1(7)(b), the employer may assert a change-
> of-condition challenge under SDCL 62-7-33 where it bears the
> burden of proof.

Id. at 886 (citations, italics and brackets omitted).   The court reversed and

remanded the May 15, 2013, decision of the DOL and causation findings

because they "were based on an estopped position[.]"   Id. at 887.

On June 20, 2015, Acuity stipulated with Mr. Hayes that "[t]he South

Dakota Supreme Court found that [Mr. Hayes] met his burden of proving by a

preponderance of the evidence that his work related activities as of August 3,

2010, were a major contributing cause of his disability."   (Docket 1 ¶ 69).   On

July 13, 2015, the DOL entered an order accepting the parties' agreement.   Id.

¶ 72.   Acuity paid Mr. Hayes the previously denied medical benefits in the

amount of $31,930.36.   Id. ¶ 73.   On August 19, 2015, the DOL approved Mr.

Hayes' attorney's fees of $11,175.62, sales tax of $670.54, and out-of-pocket

costs of $1,530.14, for a total of $13,376.30.   Id. ¶ 77.

**ANALYSIS**

BAD FAITH CLAIM

Acuity contends it is entitled to judgment as a matter of law on plaintiff's bad faith claim because "[i]f an insured's claim is fairly debatable, either in fact or in law, an insurer cannot be said to have denied the claim in bad faith." (Docket 26 at p. 9) (referencing Dakota, Minnesota & Eastern R.R. Corp. v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009)). Acuity submits "[t]he fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish that the insurer did not have a reasonable basis to deny the claim. The focus is on the existence of a debatable issue, not on which party was correct." Id. (referencing Dakota, Minnesota & Eastern R.R. Corp., 771 N.W.2d at 629). Defendant asserts "because the [DOL] and the Seventh Judicial Circuit court ruled in favor of Acuity, there is no question that the claim was properly investigated and that the handling of the claim was subjected to a reasonable evaluation." Id. at p. 10.

Acuity argues because the issue involved unsettled law, the issue was fairly debatable and its conduct was reasonable as a matter of law. Id. at p. 11. "Because the [DOL] and the Seventh Judicial Circuit held in favor of Acuity," it contends "the claim was *per force* reasonably handled." Id. at p. 12 (italics in original; referencing Dakota, Minnesota & Eastern R.R. Corp., 771 N.W.2d at 630).

11

Defendant argues that prior to <u>Hayes</u>, "the South Dakota Supreme Court had not addressed the burden of proof issue contained within SDCL § 62-1-1(7); specifically, whether including the term 'remain' in the statute placed the burden of proof on a claimant." <u>Id.</u> at p. 13. "To suggest the actions of Acuity were without a reasonable basis," defendant contends, "ignores and dismisses two tribunals' interpretation of the law, and the conclusion that Acuity's position was in compliance with the law and is supported by the facts. The issues were fairly debatable." <u>Id.</u> at p. 14 (referencing <u>Dakota, Minnesota & Eastern R.R. Corp.</u>, 771 N.W.2d at 629; <u>Mudlin v. Hills Materials Co.</u>, 742 N.W.2d 49, 55 (S.D. 2007)). Just because the South Dakota Supreme Court subsequently reversed the decision of the Circuit Court and remanded the case to the DOL, Acuity argues the Supreme Court decision does not alter the conclusion the issues were fairly debatable. <u>Id.</u>

Plaintiff resists defendant's motion for summary judgment contending "[b]ecause the obligation to provide workers' compensation benefits was not 'fairly debatable' under the plain language of SDCL 62-7-33, SDCL 62-4-1, and SDCL 62-1-1(7) . . . Acuity is precluded from arguing that it misunderstood its legal duties." (Docker 32 at p. 2) (referencing <u>Bertelsen v. Allstate Ins. Co.</u>, 764 N.W.2d 495, 501 (S.D. 2009) ("<u>Bertelsen I</u>"); <u>Bertelsen v. Allstate Ins. Co.</u>, 833 N.W.2d 545, 552, 554-55 & 563 (S.D. 2013) ("<u>Bertelsen III</u>") (*abrogated on other grounds by* <u>Magner v. Brinkman</u>, 883 N.W.2d 74 (S.D. 2016)). "Because

the legal duty was not fairly debatable, as a matter of law, and because Acuity cannot argue it misunderstood its duties," plaintiff asserts defendant's motion for summary judgment "is not supported by the law." Id. (italics omitted).

Plaintiff opposes defendant's argument that because it prevailed before the DOL and circuit court, Acuity should not be held responsible now. Plaintiff argues "[b]ecause [Acuity] successfully perverted the judicial machinery at the administrative and circuit court level . . . . [it] is continuing to seek an unfair advantage from its judicially estopped arguments and actions." Id. at p. 8.

Plaintiff submits Stuckey[4] and Hayes did not announce new workers' compensation rules because "[f]or decades, South Dakota has required all parties who wish to reopen workers' compensation benefits to proceed under SDCL § 62-7-33, or its predecessor[.]" Id. at p. 15 (italics and references omitted). Using the Bertelsen line of cases, plaintiff submits "that a trial court's errors of law do not make an issue 'fairly debatable.'" Id. "In other words," plaintiff contends "the law exists outside of the decisions of the [DOL] or the circuit court. Under Bertelsen I, II,[5] and III an interpretation of law is not 'fairly debatable' merely because a Circuit Court Judge incorrectly accepts

---

[4]Stuckey v. Sturgis Pizza Ranch, 793 N.W.2d 378 (S.D. 2011).

[5]Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685 (S.D. 2011) ("Bertelsen II").

13

an argument." Id. at pp. 19-20 (referencing Bertelsen III, 833 N.W.2d at 563).

Plaintiff concludes:

> A "fairly debatable" showing is not made by the fact that a party convinced/tricked a tribunal into accepting barred arguments. If it were otherwise, insurers would have significant incentive to "cheat" the system and "pervert the judicial machinery," because they would have an "absolute" legal defense to bad faith. Bad action should not be rewarded; the law cannot permit a party to profit from its deception. Essentially, Acuity is again attempting to gain "unfair advantage" as a result of its own estopped arguments. . . . These arguments should be judicially estopped, here.
>
> "Getting away with it" is not a defense. Acuity's argument that it should have an absolute legal defense because it succeeded in perverting the judicial machinery is an absurd argument and that asks for an untenable result.

Id. at p. 20 (italics omitted; referencing Hayes, 853 N.W.2d at 883).

In reply, defendant argues Mr. Hayes' "suggestion that neither the Department of Labor nor the Seventh Judicial Circuit judge understood the law is demeaning to those tribunals." (Docket 38 at p. 2). Defendant submits Mr. Hayes never argued to the DOL or the Seventh Judicial Circuit Court "what he now claims was well settled law." Id. "The simple question before this court," according to the defendant is how could "Acuity have acted in bad faith if the decision to deny [Mr.] Hayes benefits and the procedure followed in connection with that denial was determined legally and factually correct by the South Dakota Department of Labor and the Seventh Judicial Circuit Court?" Id. at p. 5.

"As a matter of law," Acuity argues because both the DOL and the circuit court endorsed defendant's actions, Acuity "had a reasonable basis for the

14

positions advanced and therefore could not have acted in bad faith." <u>Id.</u> at

p. 6 (referencing <u>United States Fire Ins. Co. v. Williams</u>, 955 S.W.2d 267, 269

(Tex. Sup. Ct. J. 1997) (interpretation of a rule by the insurance company was

at least arguable because three of the five Commission reviewing officers

shared that interpretation); <u>Aetna Casualty and Surety Co. v. Superior Court in</u>

<u>and for County of Maricopa</u>, 778 P.2d 1333, 136 (Az. App. Div. 1989)

(regardless of the eventual outcome of the question on appeal, the fact that two

courts agreed plaintiff was not covered by the policy clearly demonstrates the

insurance company had a reasonable basis for denying the claim) (other

reference omitted).  "Because, by law, the decisions of Acuity are measured

based on the facts and law existing at the time the decision was made," the

defendant asserts "the decisions of the Department of Labor and the Seventh

Judicial Circuit firmly establish the conduct was reasonable." <u>Id.</u> at p. 13

(referencing <u>Mudlin</u>, 742 N.W.2d at 55).

<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Plaintiff's motion for partial summary judgment and defendant's motion

for summary judgment overlap.[6]  (Docket 35 at p. 1).  Plaintiff's motion

asserts "the obligation to provide workers' compensation benefits was not 'fairly

debatable' under the plain language of SDCl 62-7-33, SDCL 62-4-1, and SDCL

---

[6]The court finds plaintiff's statement of undisputed material facts
(Docket 36) and defendant's response (Docket 44-1) are simply an assertion of
the facts articulated in this order and the parties' bad faith arguments.   The
court will consider both but candidly places little significance on either of them.

62-1-(7)[.]" Id. at p. 2 (referencing Bertelsen I, 764 N.W.2d at 501). For this reason, plaintiff argues "Acuity is precluded from arguing that it misunderstood its legal duties." Id. (referencing Bertelsen III, 833 N.W.2d at 552, 554-55 & 563).

"Consistent with the argument raised by Acuity in its motion for summary judgment," the defendant argues "the decision in Hayes . . . was confined to the question of law: interpreting the meaning of statutes." (Docket 41 at p. 6). Acuity submits "[t]he issues involved in addressing claims of whether benefits are due are legally different from claims the law existing at the time decisions were made was not fairly debatable." Id. at p. 8. Because the DOL and circuit court ruled in Acuity's favor, defendant contends its "arguments advanced . . . were fairly debatable and are sufficient to support summary judgment in favor of Acuity." Id. at p. 9. "Adopting the position advocated by [Mr.] Hayes," defendant argues "would result in the situation where no insurer could ever offer a rationale supporting a different result to another court without exposing itself to bad faith damages in the event it does not prevail." Id. at p. 11. In the alternative, Acuity contends that if its motion for summary judgment is not granted, the insurer's "knowledge or reckless disregard of the lack of a reasonable basis remains a question of fact." Id. at p. 12.

Contrary to Acuity's argument, Hayes was not "the first time, the Court addressed the need for an employer and insurer to use SDCL 62-7-33 to

challenge whether continued benefits are causally related to a work injury once a compensable injury is proven." (Docket 38 at p. 22). See Wetch v. Crum & Foster Commercial Ins., CIV. 17-5033, 2020 WL 898357 (D.S.D. February 25, 2020).[7]

In 1990, the South Dakota Supreme Court held "[b]y virtue of SDCL 62-7-33, [DOL] has continuing jurisdiction to adjust any payment from the original injury based upon a change of condition occurring since the last award." Whitney v. AGSCO Dakota, 453 N.W.2d 847, 850 (S.D. 1990). "An agreed stipulation entered into between employer and employee, which is filed and approved by Department, may have the effect of a final determination." Id. The court approved the trial court's conclusion that "[t]he language in the Stipulation and approval did not lack finality. On the contrary, the Stipulation clearly permitted increased benefits only if Whitney's percent disability increased or if he required further medical treatment as a result of his working injury." Id. (emphasis added). The court concluded that DOL's "failure to reserve jurisdiction, especially when considering the specific provisions of the stipulation, renders those issues res judicata absent a showing of change of condition." Id.

In 1993, the South Dakota Supreme Court held "[t]he holding in Whitney was decided on well settled law of this state that worker's compensation

---

[7]Throughout the relevant analysis the court will not cite to the decision in Wetch but directly to the case authority cited in that decision, unless otherwise indicated.

awards, whether by agreement of the parties or following an adjudication, are res judicata as to all matters considered unless the department has reserved continuing jurisdiction over one or more questions."  Larsen v. Sioux Falls School District No. 49-5, 509 N.W.2d 703, 706 (S.D. 1993).  The Larsen court stated "[a] statutory exception to the finality rule is found in SDCL 62-7-33 which gives the Department continuing jurisdiction to adjust payments when there is a physical change in the employee's condition from that of the last award."  Id. at 707 (referencing Whitney, 453 N.W.2d at 850-52; other references omitted).  "While some members of the general public and the Department may have operated under a misunderstanding of the law of this state, we are of the opinion that our decision in Whitney should not have come as a surprise to anyone in that it was based on common sense and clear precedents of this court."  Id.  Reflecting on "apparent[] dictum" in Call v. Benevolent and Protective Order of Elks, 307 N.W.2d 138 (S.D. 1981), the Larsen court reminded its readers "the 'provision purporting to authorize a review in the event that claimant incurred further disability or medical expenses' is nothing more than a restatement of the statutory provision permitting a change in payment based upon a change in condition."  Id. at 708 (emphasis added) (citing Call, 307 N.W.2d at 140).

The Larsen court "agree[d] with the Call . . . court that the questioned language is merely a restatement of 62-7-33."  Id. 509 N.W.2d at 708 n.4. The Larsen court concluded:

> The case precedent of this court is contrary to the Department's settlement agreement policy, practice, and procedure. The fact, however, that the Department may have given faulty legal advice does not change the fact that <u>Whitney</u> neither overruled clear past precedents nor did it decide an issue of first impression whose resolution was not clearly foreseen. We, therefore, conclude that <u>Whitney</u> may be retroactively applied and we reverse the trial court on this issue.

<u>Id.</u>

In 2011, the South Dakota Supreme Court, reflecting on its historical rulings and interpreting SDCL § 62-4-1, stated "[i]t is in the doctor's province to determine what is necessary or suitable and proper. . . . And '[w]hen a disagreement arises as to the treatment rendered or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.' " <u>Stuckey</u>, 793 N.W.2d at 387-88 (citing <u>Streeter v. Canton School District</u>, 677 N.W.2d 221, 226 (S.D. 2004) (quoting <u>Krier v. John Morrell & Co.</u>, 473 N.W.2d 496, 498 (S.D. 1991); also referencing <u>Engel v. Prostrollo Motors</u>, 656 N.W.2d 299, 304 (S.D. 2003); <u>Hanson v. Penrod Construction Co.</u>, 425 N.W.2d 396, 399 (S.D. 1988). In <u>Stuckey</u>, the South Dakota Supreme Court held "[w]hen [an employee] incurs medical expenses in the future, Employer may reimburse [him] or challenge the expenses as not necessary or suitable and proper under SDCL 62-7-33." <u>Stuckey</u>, 793 N.W.2d at 389. The <u>Stuckey</u> court offered the insurer no other options, either "reimburse . . . or challenge . . . under . . . 62-7-33." <u>Id.</u>

On August 27, 2014, the South Dakota Supreme Court decided <u>Hayes</u>. "When SDCL 62-1-1(7) is read not in isolation but as a whole in light of other

enactments, specifically SDCL 62-7-33, the statute's intent is not to place a continuous burden on a claimant once he . . . proves a compensable injury. Instead, once claimant proves a compensable injury, SDCL 62-7-33 provides the method for a party to assert a change in condition."   Hayes, 853 N.W.2d at 886.   "[I]f a claimant proves a compensable condition under SDCL 62-1-1(7) and the employer subsequently feels claimant's condition no longer '*remains* a major contributing cause of the disability, impairment, or need for treatment [,]' . . . the employer may assert a change-of-condition challenge under SDCL 62-7-33 where it bears the burden of proof."   Id. (citing SDCL § 62-1-1(7)(b); emphasis in opinion).   "Employer may assert that Hayes' condition changed after August 3, 2010, and his condition no longer '*remains* a major contributing cause of the disability, impairment, or need for treatment.' . . . To argue that, Employer must assert a change in condition under SDCL 62-7-33 where it, not Hayes, bears the burden of proof."   Id. at 887 (citing SDCL 62-1-1(7); emphasis in opinion).

It has been clear since Whitney in 1990 that SDCL § 62-7-33 is the exclusive statutory mechanism by which an insurer can challenge an employee's medical expenses.   Whitney, 453 N.W.2d at 850.   The Larsen court emphasized this point.   "The holding in Whitney was decided on well settled law of this state[.]"   Larsen, 509 N.W.2d at 706.   Stuckey made even more clear the options available to an insurer, either reimburse the employee for medical expenses "or challenge the expenses as not necessary or suitable and

proper under SDCL 62-7-33." Stuckey, 793 N.W.2d at 389. Hayes did not announce new law in this regard.

In Bertelsen I, the South Dakota Supreme Court was reviewing the trial court's grant of summary judgment to the insurance carrier on a bad faith claim involving the interpretation of SDCL § 62-1-1.3. Bertelsen I, 764 N.W.2d at 498-99. Rejecting defendant's argument that the interpretation of § 62-1-1.3 was fairly debatable, the court held the language of the statute "is plain, unambiguous, and not susceptible to debate." Id. at 500-01. The court held the carrier's "obligation was clear from the statutory language alone, and an interpretative decision from [the South Dakota Supreme Court] was not necessary for [the carrier] to have determined its duty under its policy." Id. at 501. The South Dakota Supreme Court reversed the trial court's decision which adopted the carrier's argument that the interpretation of § 62-1-1.3 was fairly debatable and permitted plaintiff's bad faith claim to proceed. Id.

The same rationale applies to Mr. Hayes' case. At the time of its denial of additional benefits to Mr. Hayes, Acuity's "legal duty was not fairly debatable. A statute [SDCL. § 62-7-33] clearly controlled." Bertelsen III, 833 N.W.2d at 563. "While some members of the general public and the Department may have operated under a misunderstanding of the law of this state," the South Dakota Supreme Court made clear in Larsen that the court's decision "in Whitney should not have come as a surprise to anyone in that it was based on common sense and clear precedents of [the] court." Larsen, 509

21

N.W.2d at 707.   Acuity's "obligation was clear from the statutory language alone and an interpretive decision from [the South Dakota Supreme Court] was not necessary for [Acuity] to have determined its duty under [§ 62-7-33]." Bertelsen I, 764 N.W.2d at 500-01.

The question of Acuity's actual intent is a factual matter which must be resolved by the jury should the defendant claim the breach of its duty to Mr. Hayes "occurred for reasons other than fairly misunderstanding its legal obligation under the statute."   Bertelsen III, 833 N.W.2d at 563.   What the decisions of the South Dakota Supreme Court before Hayes clearly prohibited was an argument Acuity reasonably believed it had the right to terminate benefits to Mr. Hayes before petitioning the DOL consistent with SDCL § 62-7-33.   Id.

Defendant's motion for summary judgment is denied and plaintiff's motion for partial summary judgment is granted, with the proviso that Acuity's actual intent remains a jury question consistent with this order.

BARRATRY AND ABUSE OF PROCESS CLAIMS

Defendant seeks summary judgment on plaintiff's claims of barratry and abuse of process for the same reasons asserted in Acuity's summary judgment motion on Mr. Hayes' bad faith claim.   Acuity argues, "when considering claims of barratry, the reviewing court does not take into consideration whether a party will ultimately prevail on the position advanced in litigation." (Docket 26 at p. 16) (referencing Pioneer Bank & Trust v. Reynick, 760 N.W.2d

139, 144 (S.D. 2009). Defendant submits "[t]he existence of rational arguments, based on the evidence and the law in support of claims, removes matters from claims of barratry." Id. Because both the DOL and state circuit court ruled in Acuity's favor, defendant asserts it "is not liable if [it] has done no more than carry a process to its authorized conclusion." Id. at p. 17 (referencing Miessner v. All Dakota Ins. Association, Inc., 515 N.W.2d 198, 204 (S.D. 1994)). "When a claim of bad faith fails," Acuity concludes "so do[] the claim[s] of barratry and abuse of process." Id. (referencing Mudlin, 742 N.W.2d at 50).

Plaintiff's response argues the errors of the DOL and the state circuit court permitted Acuity to execute its "plan made prior to admitting the claim to the Department." (Docket 32 at p. 21) (emphasis omitted). Acuity's plan, argues plaintiff, "was a perversion of the judicial machinery." Id. (internal quotation marks omitted).

In addition to the facts stated above, the following facts are pertinent to defendant's motion for summary judgment on barratry and abuse of process. The facts are "viewed in the light most favorable to the [plaintiff] opposing [defendant's] motion." Matsushita Elec. Indus. Co., 475 U.S. at 587.

After Dr. Anderson's March 30, 2010, deposition mentioned earlier in this order, Acuity's attorney notified the claims adjuster the next day that "[i]t did not go well. . . . Dr. Anderson . . . lower[ed] his percentage allocation . . . to the preexisting down to 50/50. As you know, under South Dakota law 50/50

23

is enough to prove causation. Based on Dr. Anderson's testimony, I think we are stuck on this claim." (Docket 33-2 at p. 1).

The claims adjuster noted the deposition "of Dr. Anderson did not go well at all." (Docket 33-3 at p. 2) (capitalization omitted). The claims adjuster asked Acuity's attorney to try to settle the case and entered another note in the claims file: "Dr Anderson just put a nail in our coffin." Id. (capitalization omitted). After reviewing Dr. Anderson's deposition, on April 6, 2010, Acuity's claims adjuster acknowledged the doctor's opinion was that Mr. Hayes' condition was "50/50" meaning 50 percent was caused by a pre-existing injury and 50 percent was a work injury, "which still does not help us at all." Id. The claims adjuster and defendant's attorney agreed Acuity should "pick it up for now and then in about 6-12 months, we send him for a new IME w/an ortho that specializes in spines." Id. (capitalization omitted). The claims adjuster followed the entry up with another comment: "I agree w/this plan as about the only way we could possibly close this case out." Id. (capitalization omitted).

Months later, Acuity required Mr. Hayes to see Dr. Segal for second IME. Id. at p. 4. Accepting Dr. Segal's opinions, the claims adjuster wrote "the 3/27/07 injury is no longer a major contributing cause or need for ongoing tx [treatment] whatsoever." Id. at p. 6 (capitalization omitted). Based on this determination, Acuity's attorney sent Mr. Hayes' worker's compensation counsel an August 5, 2011, letter stating: "[p]er Dr. Segal's IME report dated

24

July 22, 2011, Acuity is denying any further medical treatment.   If you

disagree with this denial you have two years to file a petition for hearing."

(Docket 33-6).

On January 19, 2012, Mr. Hayes filed a petition for hearing with the

DOL.   (Docket 33-7).   On February 2, 2012, Acuity's attorney reported back to

the claims adjuster, who placed the following comment in Mr. Hayes' file.

> Current dispute is whether Acuity can deny the case on causation.
> If their initial Dr opined the work injury was a MCF [major
> contributing factor] and the answer was amended to reflect that
> opinion.   [Claimant] is arguing we are precluded from raising any
> addl defenses.   D.O.L. recently ruled in another case in which
> employer would have to show a change in condition in order to contest
> causation.   [Acuity's attorney] does not believe that is the correct
> standard.   [Attorney] handled a similar case to this w/ [Mr. Hayes'
> attorney] and is currently briefed and in front of DOL for a decision.
> That decision could impact this case.   [Mr. Hayes' attorney] claims
> our denial is vexatious and unreasonable.

(Docket 33-3 at p. 6) (capitalization omitted).

During the DOL prehearing activities, Acuity's attorney reported to the

claims adjuster that Mr. Hayes' "claim is that we cannot challenge without a

change of condition.   I disagree.   We will see what the department thinks.

[ALJ #1] was [the] judge who ruled needed change so that that's why we kicked

her off the case."   (Docket 33-8 at p. 1).

Following Dr. Segal's deposition in the fall of 2012, Acuity's attorney

reported back to the claims adjuster who memorialized the conversation with

the following entry.

> Dep of Dr Segal did not go as well as it could have. . . . He stated Dr
> Anderson was wrong from the beginning and this case was never a

25

50/50.   Per Atty . . . that really injured our chances of success here . . . . Trial . . . to be tomorrow in R.C.   Told him I would prefer to roll the dice on this one and proceed than to just back out now.

Id. at p. 9 (capitalization omitted).

Following the DOL hearing, Acuity's attorney reported back to the claims

adjuster who wrote in the file:

Hearing went better than expected, still an uphill climb.   Insd [Attorney] was very happy w/the way the hearing went biggest issue is whether we are barred from re-litigating the mcf issue.   Segal hurt us in this respect simply because his testimony is that it would be his opinion that the work injury was not an mcf back in 2007. PA [plaintiff's attorney] can argue that we could have presented Segal back in 2009 and we don't get 2 bites of the apple—so to speak.

Id. (capitalization omitted).

Barratry is defined in South Dakota law:

Barratry is the assertion of a frivolous or malicious claim or defense or the filing of any document with malice or in bad faith by a party in a civil action.   Barratry constitutes a cause of action which may be asserted by filing a pleading in the same civil action in which the claim of barratry arises or in a subsequent action.   A claim of barratry shall be determined in the same manner as any other substantive cause of action asserted in that civil action.

SDCL § 20-9-6.1.   "To fall to the level of frivolousness there must be such a

deficiency in fact or law that no reasonable person could expect a favorable

judicial ruling. . . . Frivolousness connotes an improper motive or a legal

position so wholly without merit as to be ridiculous."   Pioneer Bank & Trust,

760 N.W.2d at 143 (internal citation, quotation marks and brackets omitted).

"An action is malicious if it is begun in malice and without probable cause to

believe it can succeed, and which finally ends in failure. . . . Malice exists when

26

the proceedings are instituted primarily for an improper purpose." <u>Id.</u> (internal citation, quotation marks and brackets omitted).

"Abuse of process consists of the malicious misuse or misapplication of legal process after its issuance to accomplish some collateral purpose not warranted or properly attainable thereby." <u>Layton v. Chase</u>, 144 N.W.2d 561, 563 (S.D. 1966). "It is not an action for maliciously causing legal process to be issued." <u>Id.</u> The "essential elements" of an abuse of process claim include: "(1) The existence of an ulterior purpose, and (2) A willful act in the use of the process not proper in the regular prosecution of the proceeding." <u>Id.</u>

Defendant's motion for summary judgment on plaintiff's barratry and abuse of process claims must be denied. First, Acuity's motion fails because defendant did not succeed on its bad faith argument. Second, there are undisputed facts before the court upon which a jury could find Acuity asserted a frivolous defense and its actions were malicious. A jury could find Acuity asserted a defense for the improper purpose of avoiding its legal obligation to pay benefits to Mr. Hayes. A defense which Acuity knew was advanced "without probable cause to believe it would succeed, and which finally ended in failure." <u>Pioneer Bank & Trust</u>, 760 N.W.2d at 143. If that version of the facts is adopted by the jury, defendant's conduct would constitute both barratry and abuse of process.

Defendant's motion for summary judgment on plaintiff's barratry and abuse of process claims is denied.

CONVERSION CLAIM

Defendant argues plaintiff's count III for conversion must fail because he "did not have a property interest in any insurance benefits until the South Dakota Supreme Court reversed the determination of the Department of Labor and the Seventh Judicial Circuit." (Docket 26 at p. 19). Acuity submits plaintiff's "inability to establish the essential element of ownership rights ends consideration of the claim and warrants dismissal." Id. at p. 20. Because Mr. Hayes cannot "establish an ownership or possessory interest, plaintiff cannot prove interference with that interest or deprivation of that interest." Id. at p. 21. Based on these arguments, defendant contends "[s]ummary judgment on the claim of conversion is warranted." Id.

Plaintiff's response asserts he "had a legally protected interest in the continued receipt of [workers' compensation] benefits." (Docket 32 at p. 22). Mr. Hayes argues he had "procedural and substantive due process protections of his right to these benefits." Id. (citing SDCL § 62-7-3; U.S. Const. amend. XIV, § 1; and S.D. Const. art. VI § 2).

In South Dakota, the elements of conversion are:

(1) plaintiff owned or had a possessory interest in the property; (2) plaintiff's interest in the property was greater than the defendant's; (3) defendant exercised dominion or control over or seriously interfered with plaintiff's interest in the property; and (4) such conduct deprived plaintiff of its interest in the property.

Western Consolidated Co-op v. Pew, 795 N.W.2d 390, 397 (S.D. 2011) (citations and alterations omitted). "A conversion occurs whenever there is a serious

28

interference to a party's rights in his property.   The act constituting conversion must be an intentional act, but it does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." Denke v. Mamola, 437 N.W.2d 205, 207 (S.D. 1989) (citing Rensch v. Riddle's Diamonds of Rapid City, 393 N.W.2d 269, 271 (S.D. 1986)).

Contrary to Acuity's argument, defendant unilaterally terminated plaintiff's benefits without complying with South Dakota law, § 62-7-33. Unless and until Acuity prevailed under § 62-7-33, Mr. Hayes had a possessory interest in the continuation of worker's compensation benefits.   His interest in those benefits was greater than Acuity's interest but yet the defendant deprived Mr. Hayes of those benefits.

Defendant's motion for summary judgment as to plaintiff's conversion claim is denied.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion for summary judgment (Docket 25) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Docket 34) is granted consistent with this order.

IT IS FURTHER ORDERED defendant's motion for leave to file a response to plaintiff's statement of uncontested facts (Docket 44) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to file a sur-reply brief

(Docket 46 at p. 2) is denied as moot.

Dated March 20, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE